IN THE CIRCUIT COURT OF THE
9TH JUDICIAL CIRCUIT IN AND
FOR ORANGE COUNTY, FLORIDA

STEVEN CALHOUN, by and through
his next friend, JAMES KELAHER,

GENERAL JURISDICTION DIVISION

CASE NO.: 03-CA-7692

Plaintiff,

v.

HELGA MEJIA, RADINE HIMES,
JENNIFER TEBO and CHILDREN'S
HOME SOCIETY,

COMPLAINT FOR DAMAGES
(Jury Trial Requested)

Defendants.
_____/

FILED IN OFFICE 8-15-03
LYDIA GARDNER, Clerk, Circuit Court Orange Co., FL
By DONNA J. LOKEY D.C.

Plaintiff Steven Calhoun, by and through his next friend, James Kelaher, sues Defendants Helga Mejia [Mejia], Radine Himes [Himes], Jennifer Tebo [Tebo] and Children's Home Society [CHS], and alleges:

1. This is an action for damages that exceed $150,000 and for other relief within the jurisdiction of this Court.

2. At all times material, the minor Plaintiff was under the control and in the foster custody of the Florida Department of Children and Families [DCAF].

3. The majority of the Plaintiff's damages resulted from misconduct, errors and omissions occurring within Orange County.

4. Venue is proper within Orange County because the Defendants herein are located in Orange County.

2

5. To the extent this action is brought against each Defendant individually because of their misconduct as government officials for Florida DCAF, said individuals are liable to the minor Plaintiff pursuant to Title 42 Section 1983 for the harms resulting from each of their acts of deliberate indifference and reckless disregard to the right of the minor Plaintiff to be safe and free from harm and cruel and unusual punishment while in DCAF custody, a right guaranteed and protected by the due process clause of the United States Constitution.

6. To the extent that Defendant Tebo was acting only on behalf of CHS, and to the extent CHS was an independent contractor with control over its case management responsibilities, Defendant CHS is vicariously liable for the wrongful acts and omissions of Jennifer Tebo. Defendant CHS may also be contractually liable for damages caused by DCAF personnel during CHS's management of Steven's case.

## The System

7. At all times material, each of the individual Defendants in the case at bar worked and acted under color of state law, undertaking non-delegable responsibilities for the proper functioning of the Florida foster care system in Orange County.

8. At all times material, all Defendants acted under color of state law, undertaking non-delegable responsibilities for the proper functioning of the Florida foster care system in Orange County and for the safety, custody, supervision and care of the Plaintiff.[1]

9. Each Defendant knew of the pertinent standards and of the conduct expected of him or her in conjunction with Plaintiff's known right to be kept safe and free from harm.

10. DCAF regulations require, inter alia; at least weekly visits to children in emergency shelters and at least monthly visits to children in foster houses and treatment facilities, to make sure that children in such placements are safe and their needs are being met; that shelters, foster houses and facilities not be licensed unless the family members the structure and facilities are safe and appropriate; that foster children be put only in foster shelters or foster houses where the foster children

---

[1] Pursuant to section 409.145, Florida Statutes and the federal Adoption and Safe Families Act (ASFA), the State of Florida DCAF operates a system of foster care to keep safe and meeting the needs of Florida's abused or neglected children who have been adjudicated dependent and put in foster custody in accordance with the provisions of chapter 39, Florida Statutes, chapter 65C Florida Administrative Code and DCAF's operating procedures and policies, which constitute minimal standards for the prevention of abuse, neglect and harm to dependent children such as Plaintiff.

3

will be safe; that any suspected incident of abuse or neglect be reported to the statewide Abuse Hotline, and that each incident be fully reported; that a proper risk assessment be done during the investigation; and that foster children be moved promptly to safety, even during investigations, when there is any question at all about the child's safety; and that foster children be kept free from abuse and be kept in a safe, non-harmful environment.

11. Throughout the duration of Plaintiff's stay in foster care, there was a history of all too frequent "institutional" abuse and neglect by DCAF-selected caretakers of foster children, due to longstanding, pervasive, well-documented patterns of unconstitutional acts on the part of DCAF personnel including: (a) failing to make regularly scheduled visits which would reveal injuries and other consequences of such abuse and neglect; (b) licensing unsuitable foster facilities and unsafe and inappropriate foster homes; (c) placement of foster children in unsafe foster homes and other unsafe placements; (d) failure to report and fully investigate instances of suspected abuse; (e) failure to make a proper risk assessment during investigations; and (f) failure to move foster children to safety during investigations when a question about their safety was reasonably presented.

4

12. All conditions precedent have occurred, been satisfied or waived.

## COUNT I - CLAIMS AGAINST HELGA MEJIA

Plaintiff realleges all prior paragraphs and further alleges:

13. From 1997 through March or April 2000, Defendant Helga Mejia served as caseworker responsible for the safety of Steven Calhoun.

14. Beginning in September 1997, when she was assigned to the case of the minor Plaintiff, Defendant Mejia knew that she did not have the training necessary to properly discharge her obligations to Steven Calhoun.

15. Defendant Mejia advised various persons that she did not know what to do with Steven's case and yet kept herself on the case.

16. Notwithstanding her awareness of her lack of knowledge and experience, throughout her time as case manager for Steven, Defendant ignored the obligation she was under to keep Steven safe while assisting in moving the case expeditiously toward the goal of reunification.

17. Defendant Mejia knew that Steven was being given mind altering drugs at the facilities he was in - drugs never tested for use in children by the drugs

manufacturer, and never approved by the FDA for use in children.

18. Defendant Mejia was deliberately indifferent to and in reckless disregard of the harm she knew Steven was suffering.

19. Defendant Mejia attempted to thwart reunification in a variety of ways, in that she allowed Steven to remain at Devereux despite his being abused by the administration of dangerous drugs there, and her awareness of the adverse impact on him and the harm he was suffering as a result.

20. Defendant Mejia, instead of acting as a professional social worker, Defendant Mejia collaborated with Defendant Tebo to thwart the reunification goal toward which they were supposed to be working along with Steven.

21. Defendant Mejia kept Steven in a dangerous placement despite knowing that his condition was deteriorating, at least in part because of the psychiatric medications with which Steven was being abused and his lack of a good permanent family.

22. At all times, Defendant Mejia ignored available information about the harmful environment posed by Devereux, and the numerous child on child, staff on child

6

and excessive psychological drug use problems known to exist at Devereux.

23. Defendant Mejia helped keep Steven at Devereux, benefiting Devereux, while causing further harm to Stephen.

24. In 2000, [Steven had already been at Devereux for more than two years, when the Court ordered independent psychologist Grbac to oversee Steven's case and provide family counseling to facilitate the reestablishment of the severed relationship between Steven and his mother], Defendant Mejia worked with Defendant Tebo to thwart the reunification process and helped orchestrate a transfer of Steven out of the Orange County area and moved Steven [without Court permission or advance notice to Steven's guardian ad litem, the Court or the mother or her attorney] to a locked residential facility in Manatee County which had a history of abuses of children through medication, excessive restraints and inadequate staff supervision.

25. While Steven was the responsibility of Defendant Mejia, Steven was subjected to such a dangerous, toxic, abusive mixture of psychotropic medications that he had to be Baker Acted on several occasions, for the stated reason of suicidal or homicidal ideations, despite the fact that anyone exercising any degree of care at all would have known that the majority if not all of Steven's behavior

7

"issues" were the result of the drugs to which he was being subjected.

26. As a direct and proximate result of the deliberate indifference and reckless disregard of Defendant Mejia to his right to be kept safe and free from the cruel and unusual punishment of the sort to which Defendant Mejia caused him to be inflicted, Steven suffered bodily injury, resulting pain and suffering, disability, disfigurement, brain damage, psychological trauma, paralysis, mental anguish and emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical care, psychiatric and psychological care and therapy, rehabilitation-related expense and other extraordinary expenses relating to his condition including but not limited to his extraordinary education needs and extraordinary needs of daily living, room and board, loss of ability to earn money, reduction of earning potential, aggravation of a previously existing condition and reduction of his ability to maximize his potential and the need for attendant care. The losses are permanent and the Plaintiff will suffer the losses in the future.

COUNT II - CLAIMS AGAINST DEFENDANT HIMES

Plaintiff realleges paragraphs 1 through 16 and further alleges:

27. At all times material, beginning in approximately 1996 and continuing thereafter until at least the end of 2000, Defendant Radine Himes served first as supervisor responsible for Steven Calhoun and later as the Program Operations Administrator (POA) directly responsible for his safety.

28. As the immediate supervisor of the unit responsible for supervising Steven, Defendant Himes acted with deliberate indifference and reckless disregard in allowing Steven to be put with Devereux, despite the Department's records clearly reflecting that Devereux was a place not suited for Steven, not safe for Steven, and was a place in which Steven would be subjected to mind altering medications never tested for use in children by their manufacturers and never approved for use in children by the Food and Drug Administration.

29. From virtually the outset of Devereux being given physical custody of Steven, with the state being billed exorbitant amounts of money on a daily basis for Steven, Defendant Himes assisted Devereux in using Steven to exploit money from the state of Florida, while causing harm to Steven.

30. As the months and years went on, Defendant Himes continued to be involved in Steven's case, even after

she was promoted from being the supervisor of the unit in which Steven's case was assigned to the position of Program Operations Administrator (POA).

31. As POA, Defendant Himes had direct responsibility to make sure that no child for whom she was responsible was being subjected to abuse or neglect while in the state's foster custody.

32. The monthly reports that were sent by Devereux to the Department were reports available to Ms. Himes and, by the middle of 1998, Defendant Himes had been personally requested for assistance and direct intervention in Steven's case.

33. Instead of acting consistently with DCAF regulations, rules, policies and procedures, Defendant Himes acted with deliberate indifference and reckless disregard to Steven's safety, choosing instead to rubber stamp the reckless and indifferent actions and omissions of Defendants Mejia and Tebo, keeping Steven subjected to abusive situations in Devereux and condoning the conspiratorial thwarting of the family therapy ordered by the state dependency court that resulted in Stephen being spirited from the Orange County facility in which he had been placed to an out of county facility at least two hours

distant, a move that Defendant Himes was well aware would make impossible the court ordered family therapy.

34. Throughout her involvement with Steven's case, Defendant Himes was well aware that he was being subjected to abuses in the facilities in which the Department placed him, that he was being subjected to abuse as defined in Chapter 39 by being subjected to mind altering medications that had not been tested for use in children by the manufacturers of said drugs, knew that the drugs in question had not been approved for use in children by the United States Food and Drug Administration, knew that the drugs were dangerous to children, knew that the drugs could cause side effects that would most likely endanger the children and cause further harm to the children, as they did with Steven.

35. At all times material, Defendant Himes had personal knowledge that Steven was deteriorating under the drug, physical restraints, atmosphere and environment provided to him under her direction, yet did absolutely nothing to protect him and remove him from the dangerous environment, and did what she could to derail the case plan in effect and approved by the Court that directed the Department to be moving toward reunification of Steven with his mother as expeditiously as possible.

36. As a result of the deliberate indifference and reckless disregard of Steven's right to be safe, Steven suffered bodily injury, resulting pain and suffering, disability, disfigurement, brain damage, psychological trauma, paralysis, mental anguish and emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical care, psychiatric and psychological care and therapy, rehabilitation-related expense and other extraordinary expenses relating to his condition including but not limited to his extraordinary education needs and extraordinary needs of daily living, room and board, loss of ability to earn money, reduction of earning potential, aggravation of a previously existing condition and reduction of his ability to maximize his potential and the need for attendant care. The losses are permanent and the Plaintiff will suffer the losses in the future.

COUNT III - CIVIL RIGHTS CLAIMS AGAINST DEFENDANT TEBO

Plaintiff realleges paragraphs 1 through 16 and further alleges:

37. Beginning in approximately September 1997 and continuing thereafter until sometime in late 2001, Defendant Jennifer Tebo was a stated employee of CHS whose

job encompassed performing case management tasks for CHS supposedly required pursuant to the CHS contract with DCAF.

38. At all times material, Defendant Tebo was acting either on behalf of CHS, DCAF or both and, in that capacity, had an absolute obligation to provide for the safety and well-being of the minor Plaintiff and to make sure that he was not subjected to abuse or neglect.

39. At all times that Defendant Tebo was involved as Steven's case manager, she directed her efforts toward trying to sabotage the Court mandated permanency goal for Steven of reunification with his mother and instead comported herself in such a way as to ignore the harmful and dangerous and abusive environment in which Steven was being kept at Devereux and the other facilities while improperly interfering with the Court mandated reunification goal.

40. To the extent Defendant Tebo was acting as a state official, she had an absolute obligation to protect Steven and his right to be kept safe and free from harm and cruel and unusual punishment while in foster care.

41. At all times material, Defendant Tebo acted inconsistently with DCAF rules and regulations mandating the conduct expected of its personnel in order to keep children in its custody safe, and did nothing to remove

Stephen from the abuses and harms to which he was being subjected on a daily basis while at Devereux and the other facilities in which he was put.

42. At all times, Defendant Tebo knew that the none of the drugs that Steven was being given had ever been tested for use in children by the manufacturers, had not been approved by the Federal Food and Drug Administration, and were serious psychiatric drugs with known side effects harmful to children's health.

43. Despite her knowledge that Steven was being subjected to the abusive environment of Devereux with its numerous acts of child on child abuse of the sort to which Steven was subjected, despite her knowledge that Steven was not being provided with the appropriate protections he needed to see that he was kept safe and free from harm at Devereux, despite her awareness that he was deteriorating as a result of the environment including the drugs, Defendant Tebo acted with deliberate indifference and reckless disregard and left Steven to suffer more abuse while she continued to try to subvert the Court ordered family therapy and efforts being made toward reunification.

44. Defendant Tebo's conduct was so inappropriate that in late 2000 the dependency court judge, after several verbal warnings, actually had to include in a court order

the express statement that Jennifer Tebo was not allowed to act as the case manager for this child.

45. Defendant Tebo also colluded in or orchestrated the unapproved, inappropriate transfer of Steven from the Orange County facility to the distant Manatee facility, where Steven was subjected to further harm including but not limited to physical abuse, mental and emotional abuse, continued excessive doses of illegal, inappropriate, dangerous, abusive medications, all tantamount to torture of a young child, contrary to the child's right to be kept safe, free from harm and to be reunified with his family consistently with the Court's order as expeditiously as possible.

46. As a result of Defendant Tebo's conduct, Plaintiff suffered bodily injury, resulting pain and suffering, disability, disfigurement, brain damage, psychological trauma, paralysis, mental anguish and emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical care, psychiatric and psychological care and therapy, rehabilitation-related expense and other extraordinary expenses relating to his condition including but not limited to his extraordinary education needs and extraordinary needs of daily living, room and board, loss of ability to earn money, reduction of

earning potential, aggravation of a previously existing condition and reduction of his ability to maximize his potential and the need for attendant care. The losses are permanent and the Plaintiff will suffer the losses in the future.

### COUNT IV - CLAIMS AGAINST CHILDREN'S HOME SOCIETY

Plaintiff realleges paragraphs 1 through 16 and 39 through 46 and further alleges:

47. At all times material, CHS had a duty to use reasonable care in providing case management and social work services to Plaintiff.

48. To the extent that it is determined that Defendant Tebo was not acting solely as an agent of DCAF, but was acting only in the course of scope of her employment and agency with CHS, Defendant CHS is liable for the negligent and other acts and omissions of Defendant Tebo as set forth above.

49. Even if it is determined that CHS itself was acting in whole or in part as an agent of DCAF, CHS bears liability for its own negligent acts, i.e. the acts of Defendant Tebo set forth above and incorporated because said acts constitute a breach of CHS's obligations to use reasonable care in providing for the safety and well-being

of the Plaintiff as CHS coordinates and provides case management and social work services.

50. To the extent CHS has agreed to indemnify DCAF or the State of Florida for damages arising during its management of Steven's case, CHS would also be liable to Plaintiff.

51. As a direct and proximate result of said actions, Plaintiff sustained bodily injury, resulting pain and suffering, disability, disfigurement, brain damage, psychological trauma, paralysis, mental anguish and emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization, medical care, psychiatric and psychological care and therapy, rehabilitation-related expense and other extraordinary expenses relating to his condition including but not limited to his extraordinary education needs and extraordinary needs of daily living, room and board, loss of ability to earn money, reduction of earning potential, aggravation of a previously existing condition and reduction of his ability to maximize his potential and the need for attendant care. The losses are permanent and the Plaintiff will suffer the losses in the future.

## Joint Liability

52. Each of the Defendants is jointly and severally liable to Plaintiff for the damages suffered by Plaintiff.

53. Plaintiff has had to retain counsel and is obligated to pay reasonable attorney's fees; said fees are recoverable pursuant to 42 U.S.C. §1988 in conjunction with the civil rights claims against the state employee/agent Defendants.

54. Plaintiff remained in DCAF's physical custody until May 2001 and its legal custody even longer until October 2001; his records were not provided to him or his representatives until after that time. The records provided were not complete, and there is still pertinent information that should have been turned over that has not yet been produced.

55. Suit was timely begun against each Defendant within four years of Plaintiff obtaining information about each Defendant's involvement with Plaintiff. Only limited discovery is currently available. The information not yet produced will undoubtedly provide additional pertinent facts material to the Plaintiff's claims against these Defendants.

WHEREFORE Plaintiff demands the entry of judgment

against the Defendants for damages exceeding $150,000.00, plus costs and pertinent attorneys fees pursuant to 42 U.S.C. §1988, and such further relief as the Court deems appropriate. Plaintiff also demands trial by jury of all issues so triable as of right.

Dated this 11th day of August, 2003.

| | |
|---|---|
| James P. Kelaher, Esquire<br>Guardian ad Litem for Plaintiff<br>Fla. Bar No.: 328588<br>800 N. Magnolia Avenue<br>Suite 1301<br>Orlando, FL 32803-3255<br>T - 407/841-7698<br>F - 407/649-7760 | GIEVERS, P.A.<br>Counsel for Plaintiff<br>524 E. College Avenue<br>Suite 2<br>Tallahassee, FL 32301<br>T - 850/222-1961<br>F - 850/222-2153<br><br>_____<br>KAREN GIEVERS<br>Fla. Bar No.: 262005 |
| Roy Wasson, Esquire<br>Co-Counsel for Plaintiff<br>Fla. Bar No.: 332070<br>1320 South Dixie Highway<br>Suite 450 Gables One Tower<br>Miami, FL 33146<br>T - 305/666-5053<br>F - 305/666-0010 | |